UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  v.  **BUEL DEWAYNE SMILEY,**  Defendant. | CRIMINAL NO. SA-23-CR-187-OLG |

### SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

On August 15, 2023, Defendant pleaded guilty to being a felon in possession of a firearm. According to the presentence investigation report ("PSI"), Defendant's guideline imprisonment range is 27 to 33 months, with a statutory maximum of 180 months. The Government requests a sentence of 57 months imprisonment.

### I. BACKGROUND

Defendant came to the attention of law enforcement in December 2022 when an anonymous tipster reported social media content that Defendant had posted earlier that year. In his videos, Defendant repeatedly encouraged his viewers to learn how to make homemade explosives and destroy critical infrastructure to accomplish various political goals.[1] Defendant displayed firearms, explosives manuals, and laboratory equipment and chemical precursors that could be used to make explosive materials in many of those videos.

For example, on February 11, 2022, Defendant posted a video asking for "material support,"

---

[1] Defendant expressed one of his goals on December 21, 2022: "But what I want to happen is for us, Caucasian, redneck crackers, to make them give us a white reservation called Idaho and Montana. The whole state, Idaho and Montana. And guarantee us a corridor to the west coast where we can trade with other people. And we'll live there in harmony and no other groups of people will be allowed in there. No race mixing, no other races. And whenever you want to leave, you're free to leave. But you will never be able to stir up dissension on pain of being cast out. And that's what I'm fighting for."

1

the provision of which is prohibited by 18 U.S.C. § 2339A:

> For y'all that don't want to get involved and get your hands dirty, or scared to go to jail. Boo hoo. Give me some material support. Give me the tools, or people like me support—provide us the tools we need. Give us some material support from our community and we'll get this job done. The only thing is, when do we start? Today, tomorrow, next week. It seems like nobody's on the same page. Nobody knows what's going on. We're all fragmented. Trust no one. Work alone. Give me what I need and I'll show you....
>
> And when I get ready? Boy howdy. Infrastructure. Infrastructure. Infrastructure. Infrastructure. I cannot say that enough. 90 days! Disrupting this infrastructure in 90 days, they will give us concessions, I promise you. Remember the pandemic? No food in the store, no gas? Imagine what this is gonna be like....
>
> Well, Black Book One, Black Book Two, Black Book Three. Get 'em. It'll teach you how to do what you need to do.

The "Black Books" to which Defendant referred are instruction manuals for creating improvised munitions.

On February 13, 2022, Defendant posted another video in which he explained precisely what he meant by the term "material support":

> Material support is providing the tools and means necessary for another person to get the job done, and you don't have to get involved. That way, you know, by providing, let's see...like providing a latex mask, the latest [unintelligible] tech, thermal night vision, the very best, security information, yeah, of every kind. Railroad worker? Security information. Refinery worker? Security information. DOT workers in every state? Security information. Different chemistry related items? Yeah. Don't need firearms or ammo in this conflict, really. Can't be one using firearms as a primary means of fighting anyway. I can't emphasize enough. Infrastructure. Infrastructure. Remember how people reacted to the pandemic? Bought all the stores out, there weren't no gas. Imagine then. If y'all stay the course for 90 days. **Take decisive action. Hit 'em hard, hit 'em quick, multiple targets. You do not kill innocent civilians, willfully. Some may get hurt, killed, as collateral damage. But it always happens, every conflict.** [Emphasis added]

In this video, Defendant specified the types of targets he was encouraging his viewers to consider, namely oil refineries, railroads, and other modes of transportation.

On February 26, 2022, Defendant posted a video in which he again encouraged his viewers to learn about improvised explosives to disrupt infrastructure by ordering Black Book One, Black Book

Two, and Black Book Three. In addition, Defendant provided suggestions for his viewers on how to avoid law enforcement detection, and expressed his admiration for political violence: "Watch out for cameras. Every highway in around—San Antonio, you can't get on or off the highway without cameras seeing you. Cameras are everywhere, so go get you a latex mask and do your thing, man. If we got started, I promise you, they'll give us what we want. Just like the IRA and the Sinn Fein. We need an organization like that right here in America."

On December 19, 2022, Defendant posted a video in which he silently displayed bottles of chemical precursors for explosives, laboratory equipment, and several instruction manuals on making homemade explosives. Defendant then spoke about what he had just displayed:

> Well, as you can see, guns, shotguns, rifles, AR-15s, you can have 'em. Keep 'em. I got all this shit. I don't need a gun. If I get where I need a gun, y'all have killed me. A gun is self protection. You're never gonna beat these people with guns. Infrastructure, work alone, talk to no one, trust no one. Do what you do alone. Like take a 40 ton hydraulic jack, a three, a two inch piece around rod bar, and jack apart 50 feet of the railroad line somewhere where nobody sees you or where you're at, and you've just made a lick at the infrastructure. I mean, what do y'all want to do?

On December 20, 2022, Defendant provided suggestions on how to acquire equipment and chemical precursors to make explosive materials:

> And you can find all sorts of books. You can buy acids. You can buy glycerin, you can buy nitric acid. All you gotta do is go to one of these little places that sells it. You don't even have to show your ID, nothing. Just get what you want. And I would encourage you to go buy cash, with this stuff. And just sit on it and put it up. **That's what I did.** I got a whole bunch of lab glass. Heating mantles. Stirre—a heating mantle that stirs while you're cooking it. Condensers of all sorts, uh, different kind of beakers. You know, round flasks, separators. I mean, this stuff can be built, but you have to be very, very careful and don't be stupid. And be very safety conscious. **Protect yourself. But mainly protect yourself from prying eyes and the noses of other people because this stuff is a reaction, and it does make things stink sometimes.** [Emphasis added.]

Law enforcement officers executed a search warrant at Defendant's home on March 9, 2023 and found a shotgun and pistol that appeared to be the same as the ones that Defendant had posed with online. Defendant was arrested. In addition, law enforcement officers found numerous

suspected chemical precursors for explosives, along with laboratory glassware and items that are often used as components for improvised explosive devices, such as disassembled shotgun shells. Law enforcement officers also found numerous manuals for making homemade explosives, many of which Defendant had displayed in his videos. Some of those chemicals and equipment were in a box labeled, "Very Dangerous Don't Touch or Move it!"

An FBI explosives expert examined physical samples and photographs of various chemicals seized at Defendant's home and produced a laboratory report [Exhibit 1]. The expert confirmed the presence of potassium nitrate, hydrochloric acid, citric acid, and hexamine, all of which can be used to make explosives. Exhibit 1, pages 2-3. The expert also examined photographs of unopened containers, which the expert noted were physically consistent with what they were reported to be. The purported substances in those containers all had applications in the production of explosive materials. Exhibit 1, pages 3-4. The explosives expert estimated that someone could reasonably expect to make several pounds of high explosives based on the amounts of precursors found in Defendant's home. Exhibit 1, page 4.

## II. ARGUMENT

Defendant's criminal history is arguably understated because it includes several alarming offenses for which he received no criminal history points. In addition, Defendant possessed firearms and ammunition in his home in connection with another felony offense, which qualifies for an increased offense level under USSG § 2K2.1(b)(6)(B). A sentence of 57 months would be appropriate.

### 1. Defendant's criminal history is understated.

Defendant's criminal history includes convictions from every decade of his life between his teens and his 60s. Because of their age, only Defendant's most recent felony conviction for transporting more than 700 pounds of marijuana results in criminal history points. However,

4

Defendant's convictions reflect a long history of concerning behavior. They include a conviction from 1992 for throwing a woman to the ground, attempting to remove her pants, and biting her on the nose and cheek. Defendant fled after workers in a nearby business came to the victim's rescue because she managed to break a window. PSR ¶46. In 2003, Defendant brandished a knife in an altercation with another person. PSR ¶56. In 2005, Defendant struck a victim repeatedly and stuck his thumb in the victim's eye. PSR ¶57. In 2007, Defendant pulled out a stun gun when he was told to leave a bar. PSR ¶59. And in 2009, Defendant was convicted of indecent exposure for exposing his penis to a 13-year old girl. PSR ¶61.

In addition, Defendant was on bond for a DUI offense in Alabama at the time of the offense. PSR ¶69, 70. In 2018, Defendant was accused of driving his truck up to 110 miles per hour with a blood alcohol content of .14%. Defendant failed to appear on that charge in 2020. *Id.*

The Government requests that the Court grant a variance from the guidelines based on 18 U.S.C. §3553(a)(1), because of Defendant's history and characteristics, and impose a sentence of 57 months. Defendant's criminal history reflects a long pattern of violent and disturbing behavior. In the alternative, the Government submits that the Court may depart upward from the Guidelines because "reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3(a)(1). Defendant has numerous troubling convictions for which he received no criminal history points, and he was pending trial on another charge at the time of the offense. An upward departure from the calculated guidelines is therefore appropriate.

2. **Defendant possessed firearms and ammunition in connection with another felony offense.**

USSG § 2K2.1(b)(6)(B) provides for an increased offense level of four levels for possessing firearms or ammunition in connection with another felony offense. Texas Penal Code §46.09

prohibits the possession of "components of an explosive weapon with the intent to combine the components into an explosive weapon for use in a criminal endeavor" as a third-degree felony. The definition of an "explosive weapon" includes "any explosive or incendiary bomb…" Texas Penal Code §46.01(2).

Defendant possessed many components of an explosive weapon. He had numerous chemical precursors that an FBI explosives expert confirmed could be used to make explosives. Defendant's intent to combine those components into an explosive weapon can be inferred not only from his possession of numerous instruction manuals on making homemade explosives, but also his possession of laboratory equipment for making explosives. Defendant's intent to make explosives is also reflected in the videos he posted online. For example, on December 20, 2022, Defendant exhorted his viewers to buy chemicals in cash, presumably so they could not be traced by law enforcement and added a warning to be "safety conscious." Defendant was not merely warning his viewers of the obvious physical danger from manufacturing explosives at home. Defendant specifically told his viewers, "But mainly protect yourself from prying eyes and the noses of other people because this stuff is a reaction, and it does make things stink sometimes"—suggesting that he had experience with actually synthesizing explosives from the components he possessed.

The Court should take Defendant at his word. He repeatedly expressed the desire to disrupt infrastructure by blowing up or otherwise damaging buildings and equipment associated with the production of commodities or transportation of goods, which qualifies as a criminal endeavor. Although Defendant encouraged his viewers not to willfully kill civilians, he acknowledged that his proposed actions could very well hurt or kill people—which he called "collateral damage."

Finally, Defendant possessed his firearms and ammunition in connection with this offense. Not only did Defendant possess a shotgun and pistol in his home where he stored components of an explosive weapon, the ammunition he possessed qualifies as components of an explosive weapon.

Law enforcement agents found disassembled shotgun shells, whose components (i.e., gunpowder and shot) could be used in improvised explosive devices. PSR ¶13.

Because Defendant possessed firearms and ammunition in connection with another felony offense, a sentence of 57 months is appropriate.

### III. Conclusion

Defendant has engaged in alarming criminal behavior for much of his adult life. His conduct in the instant case is a continuation of that behavior. Defendant's repeated statements about avoiding law enforcement detection (by wearing a latex mask, buying precursors with cash, and avoiding prying eyes) suggest that Defendant intends to persist in criminal activity, rather than change his behavior. A sentence of 27 to 33 months is insufficient to deter Defendant from future criminal conduct or protect the community. The Government submits that a sentence of 57 months would appropriately reflect the nature of Defendant's misconduct.

Respectfully submitted,

JAIME ESPARZA
UNITED STATES ATTORNEY

\_\_\_\_\_/s/_____
Eric Yuen
Assistant United States Attorney
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Defendant's counsel.

                                            /s/  
                                            Eric Yuen  
                                            Assistant United States Attorney